316 So.2d 154 (1975)
Charles W. BARBER et al.
v.
BOOKS, ETC., INC., and Abraham Krushevski.
AMERICAN EMPLOYERS INS. CO.
v.
Abraham KRUSHEVSKI and Books, Etc., Inc.
Nos. 6868, 6869.
Court of Appeal of Louisiana, Fourth Circuit.
July 8, 1975.
Rehearing Denied August 5, 1975.
Writ Refused October 17, 1975.
*155 Charles R. Maloney, New Orleans, for Charles W. Barber, Eldon Harvey, III, and Mary Lou Shoppe, Inc., plaintiffs-appellants.
Matthew F. Belin, New Orleans, for American Employer's Ins. Co., plaintiff-appellant.
Sessions, Fishman, Rosenson, Snellings & Boisfontaine, Robert E. Barkley, Jr., New Orleans, for Abraham Krushevski, defendant-appellee.
Jones, Walker, Waechter, Poitevent, Carrere & Denegre, Thomas M. Nosewicz and James R. Murrell, III, New Orleans, for Books, Etc., Inc., defendant-appellee.
Before SAMUEL, BOUTALL and SCHOTT, JJ.
SAMUEL, Judge.
Plaintiffs, Charles W. Barber and Eldon Harvey, III, as owners, and Mary Lou Shoppe, Inc., as tenant, filed suit against the defendants, Books, Etc., Inc. and Abraham Krushevski, to recover for property damage and loss of business caused by a fire which started at 8132-34 Hampson Street in New Orleans, the premises owned by Krushevski and occupied by Books, Etc. as tenant, and spread to the plaintiffs' adjoining building at 8136 Hampson Street. Subsequently, American Employers Insurance Company filed a second suit as the subrogee of the plaintiff owners against the same defendants, and the two suits were consolidated for trial. The defendants answered, denying any fault on their part. In addition, defendant Krushevski filed a third party petition against Books, Etc. and its insurer for indemnity.
After a trial on the merits, the court found no negligence on the part of the defendants and rendered judgment in favor of all defendants against all plaintiffs, dismissing the latters' suits. All plaintiffs, except third party plaintiff Krushevski, have prosecuted this appeal from that judgment.
*156 There is little contradiction in the facts, although numerous witnesses testified. A great deal of the testimony was devoted to photographs of the defendant premises taken shortly after the fire and on the next day.
Books, Etc. rented from Krushevski both sides of 8132-34 Hampson Street, a two-family dwelling. The dwelling had been converted into a store devoted primarily to the sale of books. Immediately to the right of that building was the building owned and occupied by plaintiffs as a dress shop. The two structures were separated by a narrow alley and a long wooden fence, both of which ran the approximate depth of both properties. There was an old wooden shed across the width of the Books, Etc. property at approximately its rear property line. This shed apparently connected with the fence between the two properties, but it had no direct connection with the main building of Books, Etc. The yard separating the fence from the building was open to some extent, and people could gain access thereto from the street without entering the building of Books, Etc.
There is no direct evidence as to the cause of the fire. The only testimony in the record relevant to its cause is that of Robert M. McBee, an inspector for the fire prevention division of the New Orleans Fire Department. Mr. McBee testified the alarm for the fire was first received by the fire department at 1:52 p.m. He arrived at the scene at approximately 2:30 p.m. Firemen were still on the premises and he immediately began a preliminary investigation. He stated the fire began in or near the shed across the rear of the Books, Etc. lot, but he was only able to determine the precise point of origin to within four or five feet because of the extent of the fire damage. From there the fire spread into the main building of Books, Etc. and then from that spot to the plaintiffs' building. Mr. McBee unequivocally stated he could not determine the cause of the fire and that any such determination would by necessity be based on mere conjecture. He found no flammable liquids in the shed nor did he find an accumulation of combustible materials of a nature to cause a fire. He stated the shed was not serviced by electricity or gas.
The lack of combustible materials in the shed was confirmed by the testimony of several witnesses, including the owner of Books, Etc., her employee, and persons visiting the premises on the date of the fire and shortly prior thereto. Without entering into a protracted discussion, the evidence shows that within three weeks prior to the date of the fire the owner of Books, Etc. caused a handyman to cut the grass in the back yard of the premises and remove a large amount of debris from the yard and from under the building. This debris was placed at the curb for collection by the sanitation department, and its existence at the curb was commented upon by a neighboring businesswoman because of its large volume. Without effective contradiction, the record establishes that the only objects in the shed at the time of the fire were an old bathtub, removed from one of the dwelling's bathrooms with the consent of Krushevski, some miscellaneous metal shelving and two old washing machines not in operation.
The defendants introduced numerous photographs in an endeavor to show the rear yard of the Books, Etc. premises was cluttered with debris. However, the testimony mentioned above, as well as the explanation by Mr. McBee of the fire department, establishes with little doubt that the debris was placed in defendants' back yard by the firemen in "overhauling" the premises after the fire, i.e., in removing wood and other materials from the burned building to prevent a reignition by hidden embers. McBee testified the fence shown leaning into the yard in some of the photographs was upright at the time he made his inspection on the day of the fire.
Plaintiffs also introduced the testimony of C. A. Guidry, an employee of the electrical *157 section of the Department of Regulatory Inspection of the City of New Orleans. Mr. Guidry holds an electrical engineering degree, is a registered professional engineer, and possesses an electrical contractor's license. He stated he had inspected the premises of Books, Etc. and found what he called electrical oddities present, such as a lamp in a bathroom which had to be turned on and off by turning the light bulb, and code variances in the switch box to the front and outside of the building, away from the fire's ignition point. He confirmed the testimony of McBee that there was no electrical service to the back shed where the fire occurred,[1] and he could not connect the fire to any of the electrical defects found by him. We note that Mr. Guidry's inspection was made more than two months after the fire in suit, apparently after the fire damage had been repaired, and was concerned only with the main building; no inspection was made of the wooden shed which had been destroyed by the fire.
The only other relevant evidence is the testimony by numerous witnesses, including the owner of Books, Etc., her employee, and persons occupying neighboring buildings, that children often played in the street and at times entered the alleyway and back yard of Books, Etc. They were requested to leave when they entered the premises, but they nevertheless returned at fairly regular intervals. Defendants offered the testimony of Mrs. Yvonne Pirrino, who operated a dress shop at 8131 Hampson Street, across from Books, Etc. She testified that only a few minutes prior to the fire she saw young children in the vicinity of the rear yard of the book store. She estimated it was probably no more than ten minutes between the time she saw the children and the time she first saw the fire.
The plaintiff bears the burden of proving his case by a preponderance of the evidence, either direct or circumstantial. Proof by direct or circumstantial evidence is sufficient to constitute a preponderance when, taking the evidence as a whole, such proof shows that the fact or causation sought to be proved is more probable than not.[2]
In this case plaintiffs attempt to invoke the doctrine of res ipsa loquitur to induce the court to infer the cause of the fire in the absence of direct evidence. Res ipsa loquitur comes into play as a rule of circumstantial evidence to show, without proof of what negligent act caused the damage in question, that it was caused by some negligence of the defendant. Nevertheless, when all the evidence has been introduced, the test to be applied by the trier of fact is: Do the facts of the controversy suggest negligence of the defendant, rather than some other factors, as the most plausible explanation of the accident? Application of the res ipsa loquitur doctrine is defeated if an inference that the accident or incident was due to a cause other than the defendant's negligence could be drawn as reasonably as an inference that it was due to his negligence.[3]
It has also been stated that the mere occurrence of a fire does not in itself justify the inference of negligence, since fires may occur from many separate and distinct causes. However, the circumstances surrounding the occurrence may justify such an inference of negligence.[4] It thus follows that no recovery can be had when there is no evidence whatever suggesting that a fire which spreads to a building was caused by the negligence of a *158 tenant, owner or landlord of an adjoining building.[5]
In the present case, the evidence establishes the origin of the fire at or near the rear shed. This shed, while old and made of dry wood, contained no combustible materials, no substantial accumulation of combustible debris, and was not serviced with either electrical or gas connections, the malfunction of which might have caused a fire. The shed was not within the sole control of the defendants because it could be reached from the street without going through the defendants' building. On the contrary, children were often seen in the alleyway and rear yard of the defendants' premises and were seen some ten minutes before the occurrence of the fire in question. Finally, there is no proof whatever in the record to indicate defendants were conducting any activity at all in the shed, whether of a business nature or otherwise, at any time proximate to the fire.
In short, considering the absence of any direct evidence as to the cause of the fire and considering the rules of law applicable to circumstantial evidence and presumptions to be derived therefrom, it is clear the cause of the fire may be inferred from factors other than the defendants' negligence as reasonably or more reasonably than such inference could be made that the fire was caused by the defendants' negligence.[6] It thus follows that there is nothing in the record to indicate more probably than not that the fire resulted from the negligence of any of the defendants. Accordingly, we must conclude the plaintiffs have failed to bear their burden of proof.[7]
For the reasons assigned, the judgment appealed from is affirmed.
Affirmed.
NOTES
[1] The absence of gas or electric service to the rear shed was further confirmed by the owner of the book shop.
[2] Boudreaux v. American Insurance Company, 262 La. 721, 264 So.2d 621.
[3] See Boudreaux v. American Insurance Company, supra, footnote 2; Hanover v. Jacobson-Young, Inc., La.App., 294 So.2d 564.
[4] Hanover v. Jacobson-Young, Inc., supra, footnote 3.
[5] Milano v. American Rent-All, Inc., La.App., 310 So.2d 146; Gwin v. American Rent-All, Inc., La.App., 310 So.2d 149.
[6] See Boudreaux v. American Insurance Company, supra, footnote 2.
[7] The lack of evidence in the present case is much more like the facts in the Milano and Gwin cases, supra, where the court said there could be no recovery in the absence of any evidence that a fire was caused by the negligence of a tenant or landlord of an adjoining building.